**John Earl MARSHALL, Kayochie Marshall, et al.,**

v.

**AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, et al.**

No. 3:01–0551.

United States District Court, Middle District of Tennessee, Nashville Division.

Oct. 18, 2001.

Thomas Anderton Wiseman, III, Edward A. Hadley, Gideon & Wiseman, Nashville, TN, K. Stephen Jackson, Gary B. Holder, Craig L. Lowell, Jackson & Shuttlesworth, P.C., Birmingham, AL, for plaintiffs.

Robert E. Cooper, Jr., Anna M. Grizzle, Bass, Berry & Sims, Nashville, TN, N. Lee Cooper, Lee E. Bains, T. Louis Coppedge, Stephen C. Jackson, Michael D. Mulvaney, Maynard, Cooper & Gale,

P.C. ,Birmingham, AL, for American General Life and Accident Insurance Company.

Christopher A. Holland, Robert S. W. Given, James E. Fleenor, Jr., Burr & Forman, Birmingham, AL, John M. Tipps, Joseph F. Welborn, III, Walker, Bryant & Tipps, Nashville, TN, for Laymon D. Phillips, Delbert E. Phillips.

## MEMORANDUM

John T. Nixon, Senior District Judge.

Pending before the Court are Defendants' Notice of Removal (Doc. No. 1), and Plaintiffs' Motion to Remand and accompanying Memorandum in Law (Doc. Nos. 18 and 19). Defendants responded by filing a Brief in Opposition to the Motion to Remand (Doc. No. 41), and Plaintiffs filed a Reply Memorandum (Doc. No. 69). Defendants also filed a Motion to Amend Notice of Removal, and Plaintiffs filed an Amended Motion to Remand (Doc. Nos. 21 and 35), which are held in abeyance for the reasons explained below. A hearing on the issues involved in the Remand and Removal requests was held by this Court on August 20, 2001. For the reasons stated below, the case is removed to this Court, and Plaintiffs' Motion to Remand is hereby denied.

## I. BACKGROUND

The motions in this case are merely the most recent chapter of the ongoing litigation involving American General Life and Accident Insurance Company ("AGLA"), which date back to 1998. *See McNeil v. Am. Gen. Life & Accident Ins. Co.*, Case No. 3:99–1157 (M.D.Tenn.) (Doc. No. 127 from the *McNeil* file, hereinafter referred as "McNeil # ", Findings of Fact & Conclusions of Law at 2–5 (describing prior litigation)).

### A. *The McNeil Settlement and the Alabama Civil Action*

In 1999, *McNeil* was filed as a class action in the United States District Court for the Middle District of Tennessee. The plaintiffs in *McNeil* represented the class of persons who had purchased insurance policies issued or administered by AGLA. Their complaint asserted various causes of action, "including federal claims based upon 42 U.S.C. § 1981 and common law claims based on breach of fiduciary duty, breach of contract, fraudulent inducement, breach of statutory duty and negligent misrepresentation." (*Id.* at 7.) In June, 2000, the parties agreed to settle the suit and this Court preliminarily certified the class under Fed.R.Civ.P. 23(b)(3), ordering notice to the potential class of members, and scheduling a Fairness Hearing. On September 8, 2000, the Court entered its Order Approving Class Settlement and Final Judgment. (*McNeil* 119 and 120.) The Order dismissed all Class Members' claims "on the merits and with prejudice." (*McNeil* 119 at ¶ 20.) Simultaneously, on May 11, 2000, another complaint was filed on behalf of the Marshall's, in the Circuit Court of Barbour County, Alabama. *See Marshall v. Am. Gen. Life & Accident Ins. Co.*, CV: 2000–035. The *Marshall* Complaint contains allegations of unjust enrichment, fraud, deceit and fraudulent suppression, and continuing misrepresentations, which are centered around AGLA's practice of charging African–Americans a higher premium based on their race. *See* Second Amended Complaint ¶¶ 53–89 (Doc. No. 19, Ex. B.)

### B. *Parties' Arguments for Removal or Remand of the State Action*

On June 22, 2001, Defendants filed the Notice of Removal of the Alabama civil action to this Court, asserting that it is proper: (1) under the All Writs Act (the "Act"), 28 U.S.C. § 1651(a) to prevent frustration of this Court's orders in the *McNeil* Settlement; (2) pursuant to 28

U.S.C. § 1331 and this Court's ancillary and retained jurisdiction because the state action conflicts with this Court's decisions in *McNeil*; and (3) pursuant to FED. R.CIV.P. 60(b)(3) because the state action is a disguised claim of fraud on this Court. (Doc. No. 1.) Defendants cite three events as the basis for this Court's jurisdiction.

First, they argue that John Eddie Marshall was not properly excluded from the *McNeil* Class, and thus, his participation in the Alabama suit violated this Court's permanent injunction, or at minimum created a dispute which this Court has retained jurisdiction to decide.[1] (*Id.* at 2; Doc. No. 41 at 8, Brief in Opposition to Remand.) Second, AGLA argues that Plaintiffs' state claims directly implicate this Court's prior rulings because their claims allege Class Counsel's misrepresentations to Plaintiffs while in the Class, and misrepresentations in a Court-approved Letter sent as part of the Class Notice package denying discriminatory pricing which AGLA allegedly continued to apply. (*Id.* at 13–14;[2] *see also* Doc. No. 1 at 10. ) They further cite to portions of Plaintiffs' Memoranda stating that AGLA suppressed information from this Court, which implicates its Findings of Facts and Conclusions of Law in *McNeil*. (*Id.* at 13.)

Finally, AGLA asserts that Plaintiffs' discovery in the state action challenges the statistical method used by the experts testifying in *McNeil*, which this Court relied upon in drafting its findings and in issuing its fairness decision. (*Id.* at 18–26, *see also* Doc. No. 41 at 22–28.[3] )

Plaintiffs' Motion for Remand and Memorandum state that AGLA is merely trying to avoid the state suit. (Doc. Nos. 18 and 19.) Plaintiffs assert that any dispute as to whether Eddie Marshall properly opted-out of the *McNeil* Class is a claim preclusion defense raised by AGLA. (Doc. No. 19 at 2.) As it regards to discovery, Plaintiffs assert it was Defendants who submitted expert reports arguing that the Settlement was relevant to punitive damages, and Plaintiffs merely cross-examined these experts. (*Id.* at 3–5.) They assert that neither the state claims nor their discovery requests represent an attack on *McNeil*. In their Reply Brief, Plaintiffs acknowledge making misrepresentation claims in their brief opposing summary judgment and their Pre–Trial contentions, but assert that their Complaint contains no such claims. (Doc. No. 69 at 12.)

■ Plaintiffs correctly assert that the All Writs Act requires a finding of ancil-

---

1. The Court's Preliminary Approval Order in *McNeil* stated that written exclusion requests had to be "signed by the Class Member or a representative who has legal authority to sign...." The dispute as to whether Eddie Marshall is still a *McNeil* Class Member arose from the conflict between his deposition where he stated not recognize the signature in his opt-out form, and his brother's sworn affidavit stating that he had signed Eddie Marshall's form per his request. The facts are not in dispute but their implications are unclear.

2. The Court: What do you contend the misrepresentation is?

　　Mr. Holder [Plaintiffs' counsel in state court]: Judge, there is misrepresentation as

to our plaintiffs when they were represented by class counsel in the McNeil Class. They represented they used all race indicators in their protocol to determine whether there was discrimination. They didn't do that.

　. . .

They also sent a letter saying that they were going to cease charging these discriminatory premiums. Well, they have not done as to our plaintiffs in this action.
(*Id.* at 14 (*quoting* Transcript June 13, 2001 Hearing, *Marshall* State Action).)

3. Plaintiffs questioned experts about the alleged "wrongful exclusion" of individuals from the Class and the fairness of the Settlement. (*Id.* at 23–28 (*quoting* Depo. Randall Kennedy).)

lary jurisdiction and exceptional circumstances in order to be used as a basis for removal, but argue that the Act is inapplicable because this Court has no ancillary jurisdiction over their claims. (Doc. No. 18.) They assert that claim preclusion by reason of a prior federal judgment is a defensive plea, which fails to support such jurisdiction,[4] and their claims do not give rise to jurisdiction in the absence of an affirmative misrepresentation claim for damages; and even if such claim is asserted, it does not interfere with the *McNeil* Orders. (*Id.; see also* Doc. No. 69 at 12 (stating that none of the fraud claims meet the *McNeil* "retained jurisdiction criteria").) They also argue that there are no "exceptional circumstances" threatening the integrity of the Court's rulings, and removal based on claim preclusion is untimely under 28 U.S.C. § 1446. (Doc. No. 19 at 15–16 (AGLA filed its Notice more than thirty five days after Marshall's deposition).) Finally, Plaintiffs assert that the state action is not a disguised Rule 60(b)(3) claim, because they have neither asked the Court to invalidate the *McNeil* Settlement, nor are they seeking relief under the Settlement. (*Id.* at 18.)

## II. DISCUSSION

### A. *This Court's Jurisdiction over the McNeil Settlement and Related Orders.*

The Order Approving the *McNeil* Settlement enjoined all Class Members not properly excluded from the Class from "filing, commencing ... any other lawsuit ... in any jurisdiction based on or relating to the claims and causes of action, or the facts or circumstances relating there-

to...." (*McNeil* 119 at ¶ 12.) Furthermore, the Court stated that "the issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over the action and to protect and effectuate the Court's Final Judgment." (*Id.*) Finally, the Court explicitly retained jurisdiction over the *McNeil* action:

**Retention of Jurisdiction.** The Court has jurisdiction to enter this Order and the accompanying Final Judgment. Without in any way affecting the finality of this Order ..., this Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement ... including, without limitation,

(a) ... resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement ...

(b) entering such additional orders as may be necessary or appropriate to protect and effectuate the Court's Order....

(*Id.* at ¶ 18, *see also McNeil* 120 at ¶ 5.)

An analysis of the Order Approving the Settlement, the Final Judgment, and the case law establishes that this Court has continuing jurisdiction over the Agreement and related orders. *See Bylinski v. City of Allen Park,* 169 F.3d 1001 (6th Cir.1999). In deciding whether Plaintiff Marshall was properly excluded from the *McNeil* Class, "[a ] district court 'is in the best position to interpret its own orders.'"[5] *In Re VMS Securities Lit.,* 103

---

4. They further assert that this Court did not intend on retaining exclusive jurisdiction over this dispute, by relying on this Court's Order Approving the Settlement which provided that "this

Order ... may be filed in any action against or by the Company ... to support a defense of

res judicata, ... or any other theory of claim preclusion...." (*McNeil* 119.)

5. Plaintiffs argue the issue is whether the brother had authority to sign the opt-out form, which does not involve *McNeil*. (Doc. No. 19 at 10.) The Court disagrees. The resolution of this issue requires the interpreta-

F.3d 1317, 1321 (7th Cir.1996) (citations omitted). Had Marshall not been properly excluded, his participation in the Alabama state action would violate this Court's permanent injunction in the *McNeil* Settlement. (*McNeil* 120 at ¶ 5.) Since this Court explicitly reserved its power to enforce the Settlement, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (recognizing that a court's explicit retention of jurisdiction over a settlement satisfies jurisdictional concerns).[6]

### B. *Removal Under the Writs Act*

■ Since this Court's Final Judgment Orders explicitly retained jurisdiction over the implementation of the Settlement, it may properly remove the state claims pursuant to the All Writs Act. *See In Re VMS*, 103 F.3d at 1323. The Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Supreme Court has stated that such commands may issue under the Act as may be necessary "to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained...." *United States v. New York Tel.*, 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977).

Plaintiffs correctly state that the Act "is not a jurisdictional blank check" (Doc. No. 19 at 7 (*quoting In re Agent Orange Prod. Liab. Lit.*, 996 F.2d 1425, 1431 (2d Cir. 1993))), but rather, it provides a basis for removal of an otherwise unremovable case, only upon a finding of ancillary jurisdiction and exceptional circumstances. *Id.; see also In Re VMS*, 103 F.3d at 1317. In *In Re VMS*, following a class settlement, some class members filed suit in a state court alleging that Prudential used fraud and misrepresentation to induce investors to settle. *Id.* at 1319. The suit was removed to federal court and the Seventh Circuit concluded that questions regarding Prudential's conduct were "inextricably intertwined with the approved class settlements and the class notice provisions." *Id.* at 1322. The district court had "power to adjudicate matters arising out of the class settlement procedures," even if "Prudential's alleged conduct occurred after the close of the class periods." *Id.*

The case presently before us is similar to *In Re VMS*. The Marshalls filed suit in an Alabama court alleging AGLA's "continued suppression [of information] and affirmative misrepresentations to the Plaintiffs, as members of the *McNeil* class action, and to the United States District Court for the Middle District of Tennessee." (Doc. No. 1 at 12, *quoting* Ex. G, Pl. Summary Judgment Opposition in *Marshall*.) Even if it is found that Plaintiff Marshall was properly excluded from the *McNeil* Class, "the Act extends, under the appropriate circumstances, to persons who, though not parties to the original action ..., are in a position to frustrate the implementation of a court order or the proper administration

---

tion of the *McNeil* Orders and their application to the facts, and the Court has specifically retained jurisdiction to hear this type of dispute. (*McNeil* 119 at ¶ 18.)

**6.** Ancillary jurisdiction over subsequent claim exists if the federal court "expressly reserved

jurisdiction" over the settlement agreement, the two claims are "factually interdependent" and the subsequent state action would "effectively nullify" the federal settlement. *Id.* at 379.

of justice...." *New York Tel.*, 434 U.S. at 174, 98 S.Ct. 364.

Under Sixth Circuit jurisprudence, the "exceptional circumstances" required for removal under the Act include a finding that the state court suit "poses an imminent threat to the integrity" of a prior federal order. *Bylinski*, 169 F.3d 1001; *Sable v. Gen. Motors Corp.*, 90 F.3d 171, 175 (6th Cir.1996). This Court's Order Approving the Settlement Agreement provided that its terms had been "entered in good faith and are hereby fully and finally approved as fair, reasonable and adequate." (*McNeil* 119 at 6.) The proceedings in the Alabama state court threaten the integrity of the McNeil Orders by entertaining allegations that AGLA's policyholders were "wrongfully excluded" from the Class Action, questioning the fairness of the relief granted, and challenging the methodology used to identify policies as discriminatory for purposes of the Settlement. (Doc. No. 41 at 18–33.)

The exercise of jurisdiction is "necessary [and] appropriate" to protect the integrity of the Court's previous orders, to safeguard the interests of the *McNeil* Class Members who came before it seeking relief, and because this Court is most qualified to review the Settlement and the claims arising out of the litigation it presided. *See* 28 U.S.C. § 1651(a); *see also In Re Fraser*, 75 F.Supp.2d 572 (E.D.Tex. 1999). This Court has the authority to remove the Alabama action because it explicitly retained "jurisdiction as to all matters relating to the ... enforcement and interpretation of the Settlement Agreement and of this Order ... and for any other necessary purpose," (*McNeil* 119 at 17), and because *Marshall* is the kind of extraordinary case that allows removal to this Court under the Act. *See Bylinski* and *Sable, supra.*

Plaintiffs' Reply Memorandum addressed some issues raised at the hearing held on August 20, 2001. Their argument against remand provides that since Plaintiffs will not seek a cause of action or an award based on AGLA's conduct in the *McNeil* Settlement, the Court has not retained jurisdiction over their state action. (Doc. No. 69 at 2.) Plaintiffs assert they have opted out of the *McNeil* class action and, "therefore, 'did not and could not rely on any fraudulent conduct committed solely in conjunction with the McNeil class action to their detriment. Thus, the State court would not and could not rule on whether a fraud was committed on this Court....'" (*Id.* at 5.)

However, Plaintiffs minimize the fact that it is not yet clear whether Eddie Marshall has opted-out of the class, and that their state suit is based on their belief that "[d]espite the use of the secret 'Rate Code' as a race indicator, AGLA failed to use the 'Rate Code' as a race indicator in the Protocol" [7] which was used to settled the *McNeil* class action. (*Id.* at 4.) Plaintiffs acknowledge their intent to introduce evidence that AGLA did not disclose information about the "secret race indicator" to this Court in the *McNeil* action, but they insist that the "issue relevant to Plaintiffs' state law claims is whether [they] were told the meaning of the 'Rate Code,' not whether there was fraud on this Court." (*Id.* at 5–6.) The Court finds that, notwithstanding Plaintiffs' assertions to the contrary, even a "factual finding" by the

---

7. The "protocol" used to settle the *McNeil* class action was partially based on a sampling of random insurance applications in each plan code to determine whether a "race indicator" was used on the application. Plaintiffs claim that this "Rate Code" was a race/gender code in disguise, which was used by Defendants in determining their pricing scheme, and which was not disclosed to this Court in the *McNeil* Settlement. (*Id.* at 4–5.)

Alabama court that such matters were concealed from this Court would result in an implicit finding that the *McNeil* Settlement was fraudulently obtained. This would clearly affect the integrity of this Court's *McNeil* Orders, and would open the gate to potential actions seeking to set aside the Settlement Agreement and Final Judgment thereby entered.[8] On the other hand, though Plaintiffs conclusively state that they "should not be required to litigate their state law claims in a foreign federal forum" (*id.* at 7), the Court cannot find any harm to Plaintiffs, if so required.[9]

## C. Miscellaneous related issues

Plaintiffs rely on *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) to argue that removal of a state proceeding under the Act on the grounds that it is precluded by a federal court order is inappropriate. (Doc. No. 19 at 8–9; Doc. No. 69 at 8 (*citing Texas v. Real Parties*, 259 F.3d 387, 2001 WL 826688 (5th Cir. July 23, 2001), holding that *Rivet* stands for "strict reading" of the removal statute, and the Act should not be used to remove an otherwise unremovable action).) However, Plaintiffs fail to distinguish between the use of the Act to remove a state action that threatens the integrity of a federal order, and the use of the Act to merely remove a claim based on claim preclusion. (*McNeil* 119 at 19 (allowing the filing of the *McNeil* Orders in any action in order to bring forward a claim preclusion defense).)

Plaintiffs also assert that unlike *Sable* and *Bylinski*, where the state damages interfered with the federal damages, any damages awarded to the Marshalls would not interfere with the *McNeil* remedies. (Doc. No. 19 at 14–15.) However, the Sixth Circuit supports an expansive reading of the All Writs Act, and the only *post-Rivet* case specifically dealing with the Act has held that it "gives federal courts 'the authority to remove an otherwise unremovable state court case in order to effectuate and prevent the frustration of orders it has previously issued.'" *Bylinski*, 169 F.3d at 1003 (*quoting In Re Agent Orange*, 996 F.2d at 1431).[10] Finally, the Court finds that the Supreme Court "has consistently applied the Act flexibly," *New York Tel.*, 434 U.S. at 173, 98 S.Ct. 364, and the

---

**8.** *See e.g., Eyak Native Village v. Exxon Corp.,* 25 F.3d 773 (9th Cir.1994) (affirming

§ 1441(a) removal to federal court of state action seeking additional damages, after finding that plaintiffs' claim that the State had a conflict of interest when it negotiated prior consent decree with Exxon implied that the federal decree had been fraudulent obtained and should be set aside).

Consistently with his concern for the effect of Plaintiffs' claims on the remainder of the class, the Hon. Judge Nixon clearly acknowledged: -"I have to be concerned for the 99 percent of the people who did not opt out. I can't just sit back and ignore those 99 percent." To which Plaintiffs counsel responded: -"And I agree with you." (Doc. No. 66, Tr. Hrng.08/20/2001.)

**9.** At the hearing held on August 20, 2001, the Court repeatedly asked Plaintiffs' counsel why is it that this Court should not hear the allega-

tions, upon learning that it may be enforcing an Agreement that was arrived at through fraud, without receiving a satisfactory response. (*Id.*)

**10.** The removal of Eddie Marshall's claim does not conflict with *Rivet*, which prohibited removals under 28 U.S.C. § 1441(b) (federal question) arising out of a claim preclusion defense. This Court's removal under the All Writs Act based on its ancillary jurisdiction over the state claims and its protective power over the *McNeil* Orders, is not at odds with *Rivet. See NAACP, Minneapolis Branch v. Metro. Council*, 144 F.3d 1168 (8th Cir.1998) (on remand from Supreme Court to consider impact of *Rivet*, it upheld the removal because "jurisdiction of the state-law claims in NAACP [was] based on All Writs Act, not on [*Federated Dep't Stores, Inc. v.] Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), or claim preclusion").

thirty-day limitation raised by Plaintiffs would be in conflict with such treatment and the purposes of the Act.

The *Marshall* lawsuit directly implicates this Court's prior rulings in *McNeil*, even if the damages the state court may award in favor of the Marshalls do not interfere with the implementation of the Settlement. Therefore, removal under the Act is proper in order to protect the integrity of this Court's orders. *See Bylinski*, 169 F.3d at 1003.

### D. Removal Under 28 U.S.C. § 1331, 1441(b) & Rule 60(b)(3)

 AGLA asserts that removal is also proper pursuant to 28 U.S.C. § 1331, 1441(b) and this Court's ancillary and retained jurisdiction. However, a defendant may not remove a case to federal court unless it is clear from the complaint that the case "arises under" federal law. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). While the decision depends solely on the complaint, courts should consider the "real nature" of the claims asserted, irrespective of their characterization. *Striff v. Mason*, 849 F.2d 240, 244 (6th Cir.1988). Therefore, the Sixth Circuit in *Striff* found that since plaintiff's claim "derived from the settlement of a federal action and . . . the relief sought had a direct and adverse action upon the federal court decree," the action "arouse under" federal law and was removable. *Id.* at 244.

 Plaintiffs argue that AGLA's reliance on *Striff* is misplaced because their claims for damages have no adverse effect on the *McNeil* Orders. (Doc. No. 69 at 17.) In *Sable*, plaintiffs also asked for damages for the nonremoval of chemicals,

which would not have prevented implementation of the court decree ordering containment rather than removal of such chemicals. 90 F.3d at 174–75. Nevertheless, the Sixth Circuit found that plaintiffs' damages claim arouse under federal law. *Id.* (*citing Striff*, 849 F.2d at 244–45). Since the Marshalls are pursuing a state claim for conduct involving a federal Settlement Agreement, their claims "arise under" federal law, and are therefore, removable under the statutes and this Court's ancillary and retained jurisdiction.

Finally, to the extent that the state claims do not directly implicate the orders entered by this Court in *McNeil* or are not otherwise subject to the Court's jurisdiction pursuant to the sources above mentioned, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367, and removal of the entire case is proper. *See Smith v. Provident Bank*, 170 F.3d 609, 614 (6th Cir.1999). Having concluded that the Alabama state action is removable under the All Writs Act, the federal statutes, and this Court's retained and ancillary jurisdiction, we need not consider whether FED. R. CIV. P. 60(b)(3) also provides a vehicle for removal.

### E. Defendants' Motion for Limited Stay

Also pending before the Court is Defendants' Motion for a Limited Stay of Ruling on the Artful Pleading issue pending final action by the Judicial Panel on Multidistrict Litigation ("MDL" Panel) as to whether to establish a MDL proceeding and to transfer the Marshall action for consolidated pretrial proceedings. (Doc. No. 44.) [11] As stated in the introductory

---

11. This Motion is in front of this Court as a consequence of their filing of a Motion for Transfer to the United States District Court for the Eastern District of Louisiana for Coordination or Consolidation pursuant to 28 U.S.C. § 1407 (Doc. No. 46), filed before the

section, Defendants' Amended Notice of Removal (Doc. No. 21), following which Plaintiffs filed an Amended Motion to Remand (Doc. No. 35) and Defendants replied (Doc. No. 57), raised the issue of whether the artful/ federal question doctrine applies here.

In their Memorandum in Support, Defendants argue that such "issue is more properly decided by the federal district court overseeing the MDL proceeding in order to ensure consistency, efficiency, and economy in rulings that will be common to" the thirteen similar actions pending in other federal courts. (Doc. No. 45 at 2.) On the other hand, Plaintiffs oppose the stay arguing that the only purpose of the Motion is to delay the trial of this matter in the state Court, and that the request is made "despite the facts that AGLA is well aware that discovery has been completed in this matter and, therefore, there is no basis for transfer of this matter to MDL...." (Doc. No. 48.) Although plausible, the Court finds that the propriety of a transfer is better decided by the MDL Panel. Also, Plaintiffs do not identify any harm from the granting of a limited stay other than a delay of the state suit, which is irrelevant in light of this Court's decision to remand Plaintiffs' action to this Court. Therefore, in the exercise of its inherent power, *see Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997), the Court grants Defendants' Motion for Limited Stay, which does not interfere with the Court's ability to decide issues related to our retained jurisdiction over the *McNeil* Settlement and this Court's Orders thereby entered.

## III. CONCLUSION

For the reasons above explained, *Marshall v. Am. Gen. Life & Accident Ins. Co.*,

Multidistrict Litigation Panel which scheduled a hearing assumed to have been held on

CV: 2000–035 is removed to the United States District Court for the Middle District of Tennessee, and therefore, Plaintiffs' Motion to Remand is DENIED. The Court GRANTS Defendants' Motion For Limited Stay and it HOLDS IN ABEYANCE a ruling on the artful pleading/ federal question issues pending the MDL Panel's decision as to whether to transfer this civil action to the MDL proceedings.

An Order consistent with this Memorandum is contemporaneously filed.

It is so ORDERED.